UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ ERIC STEVENSON,                      │
│                                      │
│                   Petitioner,        │
│                                      │
│              -against-               │
│                                      │
│ UNITED STATES OF AMERICA,            │
│                                      │
│                   Respondent.        │
└─────────────────────────────────────┘
```

18 Civ. 1722 (LAP)

S2 13 Cr. 161 (LAP)

ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Petitioner Eric Stevenson's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1]  (See dkt. nos. 19, 20 in 18-cv-1722 and dkt. no. 172 in 13-cr-161.)[2]  The Government opposes the motion.  (See dkt. no. 174.)  For the reasons set out below, the motion is denied.

I.   Background

     a. The Investigation and Indictment

From January 2011 until his conviction in January 2014, Mr. Stevenson was a member of the New York State Assembly representing District 79 in the Bronx.  (See dkt. nos. 34 at 1; 101; N.Y. Pub. Officers L. § 30(e) ("Every office shall be vacant upon the happening of . . . [an Assemblyman's] conviction

---

[1] Unless otherwise specified, all citations to docket entries herein refer to 13-cr-161.
[2]  Petitioner's Memorandum of Law in Support of his 28 U.S.C. § 2255 motion (dkt. no. 20 in 18-cv-1722) is not docketed in 13-cr-161.

of a felony.").)  Beginning in early 2012, a group of
businessmen including twin brothers Igor and Rostislav
Belyansky, Igor Tsimerman, and David Binman (together, "the
Businessmen")[3] sought then-State Assemblyman Nelson Castro's
assistance in opening an adult day care center in the Bronx.
(Dkt. no. 174 at 4-5.)  Another politician, Sigfredo Gonzalez,
brokered meetings between the Businessmen and Mr. Castro.  (Id.)
Unbeknownst to the Businessmen and Mr. Gonzalez, Mr. Castro was
cooperating with the Government as an informant.  (Id.)  After
the Businessmen paid then-State Assemblyman Castro a bribe to
further their adult day care center in January 2012 -- of which
Mr. Gonzalez took a cut -- the Government subsequently secured
Mr. Gonzalez's cooperation in April 2012.  (Id. at 5-6.)
Through Mr. Gonzalez's cooperation, the Government surveilled
multiple bribes from the Businessmen to Mr. Stevenson.  (See id.
at 6-13.)  In exchange for helping the Businessmen open their
adult day care center and introducing legislation in the New
York State Assembly ("the Moratorium Legislation") that would
benefit them financially after the center's opening, Mr.
Stevenson accepted four bribes from the Businessmen, totaling

---

[3] The Businessmen were Mr. Stevenson's co-defendants in the
underlying criminal case.  (See dkt. no. 34 at 1-2.)

$22,000, between July 2012 and February 2013.[4]  (See id. at 6-15.)

On August 15, 2013, a grand jury charged Mr. Stevenson and the Businessmen in a six-count superseding indictment.  (See dkt. no. 34.)  The indictment charged Mr. Stevenson in four counts.  (Id.)  Count One charged Mr. Stevenson with Honest Services Fraud Conspiracy, in violation of 18 U.S.C. §§ 1343 and 1346.  (Id. ¶¶ 6-9.)  Counts Two and Three charged Mr. Stevenson with Federal Programs Bribery and Travel Act Conspiracy, in violation of 18 U.S.C. §§ 666(a)(1)(B), 666(a)(2), and 1952(a)(3).  (Id. ¶¶ 10-17.)  Count Five charged Mr. Stevenson with Extortion Under Color of Official Right, in violation of 18 U.S.C. §§ 1951(b)(2) and (b)(3).  (Id. ¶¶ 20-21.)  Following the initial indictment, the Court appointed Andrew G. Patel as Criminal Justice Act ("CJA") counsel to represent Mr. Stevenson. (See dkt. no. 28.)

        b. Pre-Trial

The late Judge William H. Pauley III initially presided over Mr. Stevenson's criminal case.  (See, e.g., dkt. no. 38.)

---

[4] Mr. Stevenson's assistance included recruiting his constituents as customers for the adult day care center and facilitating the Businessmen's dealings with Con Edison and the New York City Department of Buildings.  (See dkt. no. 174 at 3, 6-8, 11, 15.) The Moratorium legislation, if enacted, would have banned the construction of other adult daycare centers within New York City for three years, thus greatly reducing competition for the Businessmen.  (See id. at 3, 9, 14-15.)

On December 10, 2013, Judge Pauley ordered a conference to discuss Mr. Stevenson's dissatisfaction with his appointed counsel.  (See dkt. no. 63.)  At the conference, both Mr. Stevenson's CJA counsel and his proposed substitute counsel, Mr. Muhammad Ibn Bashir, were present.  (See dkt. no. 74 at 2-3.)  Judge Pauley repeatedly asked Mr. Bashir if he would be ready for trial on January 6, 2014.  (Id. at 5-6.)  Mr. Bashir answered affirmatively, stating that he had no intention of delaying the trial.  (Id. at 5.)  Judge Pauley thus granted Mr. Stevenson's request for new counsel.  (Id. at 14.)

On December 18, 2013, Mr. Stevenson's case was reassigned to this Court.  (See dkt. no. 66.)  Thereafter, Mr. Bashir moved for a trial adjournment of two weeks.  (Dkt. no. 174-1 at 18, 25.)  At a final pre-trial conference on January 2, 2014, the Court denied that motion, noting that Judge Pauley had allowed Mr. Bashir's substitution on the condition that he would be ready for trial on January 6, 2014.  (See id. at 28-29.)

c. Trial and Sentencing

Trial began on January 7, 2014.  (See dkt. no. 93.)  At trial, the Government called seven witnesses: (1) Mr. Gonzalez, the cooperating witness who participated in and recorded Mr. Stevenson's and the Businessmen's conversations regarding bribes; (2) the Government investigator who surveilled those discussions; (3) a bill-writer from Albany, New York, who

4

converted Mr. Stevenson's proposed Moratorium Legislation into a drafted bill that Mr. Stevenson introduced in the New York State Assembly; (4) a Con Edison official who described how Mr. Stevenson asked Con Edison to accelerate work on one of the Businessmen's adult day care centers; (5) a New York State Board of Elections employee, (6) an employee from the Legislative Ethics Commission, who outlined public officials' duty to disclose certain payments, which Mr. Stevenson never made; and (7) a car dealership employee from where Mr. Stevenson bought a Jaguar sports car the day after he received a $10,000 cash bribe from the Businessmen.  (See dkt. no. 174 at 3-4.)  Further, the Government introduced "numerous exhibits," including recordings of conversations between Mr. Stevenson, the Businessmen, and Mr. Gonzalez.  (Id. at 4.)  Following the Government's case in chief, the defense did not call any witnesses.  (See dkt. no. 99 at 132-35.)  The jury found Mr. Stevenson guilty on all four counts.  (See dkt. no. 101 at 140-42.)

On May 21, 2014, this Court sentenced Mr. Stevenson to an aggregate term of 36 months imprisonment.  (See dkt. no. 133 at 2.)  The Court then issued a preliminary forfeiture order, which included forfeiture of the substitute asset of Mr. Stevenson's pension fund held in an account with the New York State and Local Retirement System.  (See dkt. nos. 150 at 2; 157 at 1-2.)  After briefing from the parties, the Court signed its final

order forfeiting the substitute asset in July 2015.  (See dkt.
nos. 148, 150, 156, and 162 at 4.)

> d. The Defendant's Appeals and the Instant Motion

On direct appeal, Mr. Stevenson advanced six principal
arguments: (1)  the district court's calculation of his
sentencing guidelines was improper because two enhancements that
the court selected ("public official" and "elected public
official") impermissibly overlapped (see U.S.S.G §§
2C.1.1(a)(1),(b)(3)); (2) a jury should have decided the amount
of forfeiture beyond a reasonable doubt; (3) the district
court's denial of a trial adjournment deprived him of effective
counsel; (4) an adverse evidentiary ruling violated his Fifth
Amendment rights; (5) the evidence proffered at trial was
insufficient to sustain a guilty verdict; and (6) his counsel
was ineffective for failing to raise an entrapment defense.  See
generally United States v. Stevenson, 834 F.3d 80 (2d Cir.
2016), cert. denied, 137 S. Ct. 1212 (2017); United States v.
Stevenson, 660 F. App'x 4 (2d Cir. 2016), cert. denied, 137 S.
Ct. 1212 (2017).  In a published opinion and an unpublished
summary order, the Court of Appeals denied all but the last of
Mr. Stevenson's arguments.  See Stevenson, 834 F.3d at 88;
Stevenson, 660 F. App'x at 8.  The Court of Appeals noted that
the "preferred means" for deciding ineffective assistance claims
is a 28 U.S.C. § 2255 motion, and, while briefly discussing

challenges that such a claim would face, the Court of Appeals left Mr. Stevenson the choice to bring such a motion. Stevenson, 660 F. App'x at 8.

Accordingly, on February 26, 2018, Mr. Stevenson filed the instant pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (See dkt. no. 2 in 18-cv-1722.) Mr. Stevenson's motion argues that (1) the evidence introduced at trial was insufficient to sustain a conviction, and (2) he received ineffective assistance of counsel. (See id. at 5-10.) The latter claim rests on the grounds that Mr. Stevenson's defense counsel failed to: (1) present an entrapment defense; (2) object to the Court's definition of "official act" in its jury instructions; (3) object to the Court's forfeiture order; (4) challenge the Court's decision precluding evidence of Gonzalez's racial bias; (5) present acquittal evidence; and (6) challenge the Court's rejection of adjournment. (See id. at 6-15.) After the Government filed its opposition, Mr. Stevenson moved to strike the latter three grounds of his ineffective assistance of counsel claim. (See dkt. no. 19 in 18-cv-1722.)

 II.  Legal Standards

     a. The Habeas Statute and The Mandate Rule

Under 28 U.S.C. § 2255, a federal prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the grounds, inter alia, that the

"sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).

In general, however, a § 2255 motion may not be used to relitigate issues already decided on direct appeal.  See Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006); United States v. Minicone, 994 F.2d 86, 89 (2d Cir. 1993).  This is known as the mandate rule.  Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010).  The mandate rule "prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate."  Id.; see also United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001).  In the specific context of § 2255 ineffective assistance of counsel litigation, the United States Court of Appeals for the Second Circuit has applied the mandate rule in this manner, including "when the factual predicates of []claims, while not explicitly raised on direct appeal, were nonetheless impliedly rejected by the appellate court mandate."  Mui, 614 F.3d at 53; see also, e.g., United States v. Pitcher, 559 F.3d 120, 124 (2d Cir. 2009).

   b. Ineffective Assistance of Counsel

A criminal defendant has a Sixth Amendment right "to effective assistance from his attorney at all critical stages in

<u>Strickland</u>, 466 U.S. at 689.  Accordingly, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." <u>Id.</u> at 690.

Sufficiently meeting <u>Strickland</u>'s second prong requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.  "[A] reasonable probability of a different result is a probability sufficient to undermine confidence in the outcome." <u>Wilson v. Mazzuca</u>, 570 F.3d 490, 502 (2d Cir. 2009) (internal quotation marks omitted).

c. <u>Entrapment</u>

In the Second Circuit, a successful entrapment defense contains two elements: "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." <u>United States v. Cabrera</u>, 13 F.4th 140, 146 (2d Cir. 2021) (quoting <u>Mathews v. United States</u>, 485 U.S. 58, 63 (1988)).  Predisposition is the "principal element" of entrapment and "focuses upon whether the defendant was an unwary innocent or, instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime." <u>United States v. Cromitie</u>, 727 F.3d 194, 204 (2d Cir. 2013) (quoting <u>Mathews</u>, 485 U.S. at 63).  When a petitioner claims that he "would have pursued an [entrapment] defense but for his

lawyer[]" the <u>Strickland</u> "prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial."  <u>Kovacs v. United States</u>, 744 F.3d 44, 53 (2d Cir. 2014) (internal quotation marks and citation omitted).

III. <u>Discussion</u>

Acknowledging that Mr. Stevenson is proceeding <u>pro se</u>, the Court grants his request to no longer consider his ineffective assistance claim as it relates to challenging the rejection of racial bias evidence, acquittal evidence, and a failure to object to a denial of adjournment.  (See dkt. no. 19 in 18-cv-1722.)  The Court addresses Mr. Stevenson's remaining claims in turn.

a. <u>Procedurally Barred Claims</u>

The mandate rule bars Mr. Stevenson's first claim that the evidence offered at trial was insufficient to support his conviction.  <u>See</u> <u>Burrell</u>, 467 F.3d at 165 (quoting <u>United States v. Cirami</u>, 563 F.2d 26, 32 (2d Cir. 1977)) ("When an appellate court has once decided an issue, the trial court, at a later stage in the litigation, is under a duty to follow the appellate court's ruling on that issue.")  The Court of Appeals squarely decided Mr. Stevenson's argument regarding the sufficiency of the evidence on direct appeal, declaring that "Stevenson's sufficiency challenge fails on the merits."  <u>Stevenson</u>, 660 F.

App'x at 7.  Accordingly, Mr. Stevenson's sufficiency claim is
denied because it is procedurally barred.  See Gunn v. United
States, No. 06-cr-0911 (WHP), No. 14-cv-3228 (WHP), 2017 U.S.
Dist. LEXIS 32345, at *9 (S.D.N.Y. Mar. 7, 2017) (holding
mandate rule barred sufficiency of the evidence claim).  The
Court thus turns to Mr. Stevenson's ineffective assistance
claim.

The mandate rule also bars Mr. Stevenson's ineffective
assistance claim insofar as it relies on his counsel's lack of
objections to this Court's forfeiture order and jury
instructions on the term "official act."  See Mui, 614 F.3d at
53 (describing rejection of ineffective assistance claims where
the "factual predicates" are the same as on direct appeal).
Because the Court of Appeals considered and ruled on the
substance of these issues,[5] Mr. Stevenson's framing of them
through the lens of ineffective assistance does not move the
needle.  "[A] habeas petitioner is barred from presenting an
ineffective assistance [of] counsel claim on collateral review

_____

[5] See Stevenson, 834 F.3d at 84-87 (holding that there is no
Sixth Amendment jury right for a judgment of forfeiture,
determining that the amount of forfeiture is in "the province of
the sentencing court," and any conflicts between New York state
law and federal forfeiture law are resolved in favor of federal
supremacy); see also, Stevenson, 660 F. App'x at 7 n.1 (ruling
that the evidence was sufficient to support a rational jury
finding that Mr. Stevenson "took official action" and that his
"jury-instruction challenge cannot survive plain error review.")

12

that is simply a slightly altered rearticulation of a claim that was rejected on [] direct appeal." Shapiro v. United States, 15-cv-7891 (KMW), 2018 U.S. Dist. LEXIS 228931, at *9 (S.D.N.Y Aug. 7, 2018) (quotation marks and citation omitted).  In his § 2255 petition, Mr. Stevenson continues to attack substantively the Court of Appeals' affirmance of this Court's forfeiture order and jury instructions on the term "official act."[6] However, the mandate rule bars him from doing so, leaving only the entrapment ground of his ineffective assistance claim left to be decided on the merits.[7]  See Rivera v. United States, 18-CV-5252 (KMW), 18-CV-5996 (KMW), 2021 U.S. Dist. LEXIS 80479, at *7-15 (S.D.N.Y Apr. 27, 2021) (addressing the remainder of petitioner's ineffective assistance claim on the merits despite applying the mandate rule to three of his other claims).

    b. Merits

    Mr. Stevenson argues that if Mr. Bashir was more prepared for trial, he could have mounted a successful entrapment defense.  (See dkt. no. 20 at 15-18 in 18-cv-1722.) Specifically, Mr. Stevenson asserts that (1) the Government's

---

[6] (See, e.g., dkt. no. 172 at 7-8.) ("The []definition of 'official act'. . . was clearly improper because it permitted the jury to find Mr. Stevenson guilty.") ("Forfeiture must be decided by a jury beyond a reasonable doubt.")

[7] The Court also notes that petitioner's forfeiture objection challenge ignores the record: Mr. Stevenson's appellate counsel opposed the Court's preliminary forfeiture order in her briefing on the issue.  (See dkt. no. 150 at 2.)

13

cooperating witness, Mr. Gonzalez, aggressively pursued him to avoid serving jail time himself, and (2) that Mr. Stevenson lacked the requisite predisposition to commit crimes.  (See id. at 17-22.)

With respect to predisposition, the trial record does not support Mr. Stevenson's position.  For example, Mr. Stevenson asked Mr. Gonzalez to "be careful" of "recorders" and tapped phones during their discussions regarding the bribery scheme. (See dkt. no. 95 at 288:11-18.)  On separate occasions, Mr. Stevenson asked Mr. Gonzalez if the Businessmen were "putting together a nice little package" for him and exclaimed to Mr. Gonzalez that he wanted "a blessing in place."  (See dkt. nos. 95 at 274;6-7, 289:20; 174 at 10.)  While Mr. Stevenson asserts that Mr. Gonzalez overcame Mr. Stevenson's will to effectuate the bribe scheme, this Court and the Court of Appeals rejected this line of argument.  See Stevenson, 660 F. App'x at 8 ("[T]he district court at sentencing explained that, even assuming that the government cooperator initiated the bribe scheme, the evidence of Stevenson's predisposition was compelling.") Considering the record and a lack of new evidence to rebut the readily apparent evidence of predisposition, it is highly unlikely that an entrapment defense would have succeeded at trial.  See id. ("In the face of this record, it would appear difficult for Stevenson to show that it was objectively

unreasonable for counsel not to pursue an entrapment defense or that Stevenson was prejudiced by the decision.") (citation omitted).  In short, Mr. Bashir's decision to forgo an entrapment defense was a reasonable strategic choice.  Mr. Stevenson has thus not satisfied either prong of the <u>Strickland</u> test, <u>See</u> <u>Strickland</u>, 466 U.S. at 688, 692, foreclosing his ineffective assistance claim.

IV.  <u>Conclusion</u>

For the reasons set out above, Defendant's <u>pro se</u> § 2255 petition [dkt. no. 172; dkt. no. 2 in 18-cv-1722] is denied. Because Mr. Stevenson has not "made a substantial showing of a denial of a constitutional right," a certificate of appealability will not issue.  <u>See</u> 28 U.S.C. § 2253(c)(2).  The Court certifies that any appeal from this Order would not be taken in good faith.  <u>See</u> 28 U.S.C. § 1915(a)(3); <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).  The Clerk of the Court shall close case number 18-cv-1722.

The Clerk of the Court shall mail a copy of this order to

Mr. Stevenson.


**SO ORDERED.**

Dated:     December 1, 2021
           New York, New York


_____
LORETTA A. PRESKA
Senior United States District Judge